IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| GULF COAST HOTEL-MOTEL ASSOCIATION AND ITS SUCCESSOR MISSISSIPPI HOTEL & LODGING ASSOCIATION | § § § § § | PLAINTIFF |
| v. | § | Civil No. 1:08CV1430-HSO-JMR |
| MISSISSIPPI GULF COAST GOLF COURSE ASSOCIATION, *et al.* | § § § § | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER GRANTING
CERTAIN DEFENDANTS' MOTION TO DISMISS**

BEFORE THE COURT is the Motion to Dismiss [113] of Defendants The Pass Christian Isles Golf Club, Inc., Sunkist Country Club, Inc., Mississippi Gulf Coast Golf Course Association ["Golf Association"], Pacific Life Insurance Company, Diamondhead Country Club and Property Owners Association, Inc., and Great Southern Golf Club, Inc. [collectively, "Certain Defendants" or "Movants"], filed April 1, 2010, in the above-captioned cause. Defendants SPE Go Holdings, Inc. [115], Gulf Hills Golf Club, Inc. [116], and Dogwood Hills Golf Course, Inc. [118], have joined in the Motion [113]. Plaintiff has filed a Response [119], and Movants a Reply [35], in which Defendants SPE Go Holdings, Inc. [122], and Gulf Hills Golf Club, Inc. [123] have joined. Defendant SPE Go Holdings, Inc., has also filed its own Reply [121], in which all Movants and Defendant Dogwood Hills Golf Course, Inc., have joined [124]. After consideration of the parties' submissions, the record, and the relevant legal authorities, and for the reasons discussed below, the Court finds that Certain Defendants' Motion to Dismiss [113], should be granted, and Plaintiff's claims dismissed.

I. BACKGROUND

This case involves a dispute over Plaintiff's and the Defendant Golf Association's competing voucher programs for rounds of golf at the golf courses which comprise the membership of the Golf Association. Plaintiff complains that Defendants have engaged in anti-competitive conduct by, among other things, purportedly agreeing that the Golf Association's member golf courses will provide higher rate quotes for per round golf play to Plaintiff's voucher program than to the Golf Association's.

Plaintiff filed its original Complaint [1] on November 25, 2008. Defendants filed Motions to Dismiss [19], [34], which the Court denied without prejudice. *See* Order [40]. The Court further granted Plaintiff leave to amend its Complaint. *See id.* In its August 7, 2009, Order [40], this Court advised Plaintiff that it was

> of the opinion that Plaintiff [had] not articulated sufficient factual allegations establishing any effect on interstate commerce. Such is necessary in order to support this Court's exercise of subject matter jurisdiction, and to demonstrate that Plaintiff has properly stated claims under either the Sherman or Clayton Acts.

*Id.* at pp. 5-6.

Plaintiff filed a First Amended Complaint [42] on August 31, 2009, which Defendants moved to dismiss [54]. Defendant St. Andrews Golf Course ["St. Andrews"] subsequently filed a Suggestion of Bankruptcy [71] on October 23, 2009, on behalf of South Marsh Developers d/b/a St. Andrews Golf Course. In response, Plaintiff filed a Motion [72] and an Amended Motion [73] to Lift Stay and Dismiss St. Andrews. Plaintiff then filed a Second Amended Complaint [82] without leave of

Court, which Defendants sought to dismiss [95]. In its Order [100] dated December 28, 2009, the Court struck Plaintiff's Second Amended Complaint for failure to obtain leave of Court, denied as moot the Motion to Dismiss [95], and requested briefing on whether this case would nevertheless remain subject to the automatic stay provisions of 11 U.S.C. § 362, even if St. Andrews were dismissed with prejudice.

Plaintiff then filed a Motion [101] for leave to file a Second Amended Complaint. After briefing on the bankruptcy issue, the Court [110] granted in part and denied in part Plaintiff's Motion to Lift Stay and Dismiss Defendant St. Andrews Golf Course with Prejudice [73], and dismissed St. Andrews with prejudice. The Court granted Plaintiff's Motion for Leave to File Second Amended Complaint [101], and denied as moot both Plaintiff's Motion to Lift Stay and Dismiss Defendant St. Andrews Golf Course without Prejudice [72], and Moving Defendants' Motion to Dismiss [54]. Plaintiff filed its Second Amended Complaint [111] on March 18, 2010. Defendants again move the Court to completely dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(6) for the Second Amended Complaint's failure to state a claim upon which relief can be granted. *See* Mot. [113].

## II. DISCUSSION

Plaintiff asserts violations of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, violations of section 2 of the Clayton Act, 15 U.S.C. § 13, and state law claims for tortious interference with business relations and contract. *See* Second

Am. Compl. [111], at pp. 13-18. Movants contend that Plaintiff fails to plead: (1) an antitrust injury; (2) plausible restraint of trade or conspiracy claims under section 1 of the Sherman Act; (3) monopoly or conspiracy to monopolize claims under section 2 of the Sherman Act; (4) price discrimination claims under the Clayton Act; and (5) cognizable state law claims. *See* Mot. [113], at pp. 1-2. They further maintain that Plaintiff lacks standing to assert a restraint of trade or conspiracy claim under section 1 of the Sherman Act. *See id.* at pp. 1-2. Plaintiff responds that it has alleged "enough facts to state its claims under the Robinson Patman Act, Section 1 and 2 of the Sherman Act, and its state law claims." *See* Pl.'s Resp. [119], at p. 1.

A.  Standard of Review

Federal Rule of Civil Procedure 8(a) provides in relevant part that

> [a] pleading that states a claim for relief must contain:
> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a).

Under Rule 8(a)(2), the statement need only "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). With respect to Rule 12(b)(6),

> [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is

plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (*quoting Twombly*, 550 U.S. at 556-57, 570).

The conclusory nature of allegations "disentitles them to the presumption of truth." *Id.* at 1951. A complaint must "nudge[ ] [Plaintiff's] claims . . . across the line from conceivable to plausible." *Id.* at 1950-51 (*quoting Twombly*, 550 U.S. at 570). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]' -'that the pleader is entitled to relief.'" *Id.* at 1950 (*quoting* FED. R. CIV. P. 8(a)(2)).

Finally, the Court may raise the issue of its subject matter jurisdiction *sua sponte* at any stage in the litigation. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). Federal Rule of Civil Procedure 12(h)(3) instructs that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

B.  The Court's Subject Matter Jurisdiction

The Court lacks jurisdiction over this case on the basis of diversity of citizenship, pursuant to 28 U.S.C. § 1332, as the parties are not completely diverse. Plaintiff contends that this Court has federal question jurisdiction over its antitrust claims, pursuant to 15 U.S.C. § 15(a) and 28 U.S.C. §§ 1331 and 1337, as well as

supplemental jurisdiction over its state law claims under 28 U.S.C. § 1367. *See* Second Am. Compl., at p. 7. This Court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," pursuant to 28 U.S.C. § 1331. According to 15 U.S.C. § 15(a)

> any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy....

15 U.S.C. § 15(a).

Plaintiff's claims under both the Sherman Act and the Clayton Act, as amended by the Robinson-Patman Price Discrimination Act [the "Clayton Act"], each require a showing of some nexus between Defendants' conduct and interstate commerce. *See* 15 U.S.C. §§ 1, 2, & 13. If this showing is insufficient, it follows that there is no federal question jurisdiction.

    1.    <u>The Sherman Act</u>

> Although the cases demonstrate the breadth of Sherman Act prohibitions, jurisdiction may not be invoked under that statute unless the relevant aspect of interstate commerce is identified; it is not sufficient merely to rely on identification of a relevant local activity and to presume an interrelationship with some unspecified aspect of interstate commerce. To establish jurisdiction a plaintiff must allege the critical relationship in the pleadings and if these allegations are controverted must proceed to demonstrate by submission of evidence beyond the pleadings either that the defendants' activity is itself in interstate commerce or, if it is local in nature, that it has an effect on some other appreciable activity demonstrably in interstate commerce. *Gulf Oil Corp. v. Copp Paving Co.*, [419 U.S. 186, 202 (1974)].

> To establish the jurisdictional element of a Sherman Act violation it would be sufficient for [plaintiff] to demonstrate a substantial effect on interstate commerce generated by [defendants'] activity.

*McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 242 (1980).

"Conduct deemed violative of [the Sherman] Act must have a substantial connexity to interstate commerce." *Cowan v. Corley*, 814 F.2d 223, 225 (5th Cir. 1987). The Fifth Circuit has recognized that "[i]n enacting the Sherman Act, Congress exercised the full panoply of power authorized by the Commerce Clause." *Id.* The Court explained that "[t]he broad authority of Congress under the Commerce Clause has, of course, long been interpreted to extend beyond activities actually in interstate commerce to reach other activities that, while wholly local in nature, nevertheless substantially *affect* interstate commerce." *Id.* at 225-26 (emphasis in original) (*quoting McLain,* 444 U.S. at 241).

Plaintiff alleges conduct which is essentially local in nature. *See* Second Am. Compl., at p. 7. Nowhere in the Second Amended Complaint does Plaintiff claim that any of the voucher sales at issue occurred outside the State of Mississippi. Nor does Plaintiff submit any evidence beyond the pleadings of any out of state sales. The facts pled, if true, are insufficient to establish any specific conduct in interstate commerce. For purposes of supporting its Sherman Act claims in this case, then, Plaintiff must plead either a *substantial* effect on interstate commerce, or the potential for a substantial effect on interstate commerce if the alleged conspiracy were successful. *See Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 330-31 (1991) (emphasis added).

2. The Clayton Act

The Clayton Act imposes more stringent jurisdictional requirements than the Sherman Act, as "the jurisdictional requirements of these provisions cannot be satisfied merely by showing that allegedly anti-competitive acquisitions and activities affect commerce." *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 195 (1974); *see Jefferson County Pharmaceutical Ass'n, Inc. v. Abbott Laboratories*, 460 U.S. 150, 157 n.12 (1983) (difference in scope between Sherman Act and Robinson-Patman Act is extent to which activities complained of must affect interstate commerce). To establish a violation of the Clayton Act, a plaintiff must show that at least one allegedly discriminatory sale was made in interstate commerce. *See Gulf Oil*, 419 U.S. at 195; *see also Texaco, Inc. v. Hasbrouck*, 496 U.S. 543, 556 (U.S. 1990).

If the Second Amended Complaint does not contain sufficient factual matter, accepted as true, to state a plausible claim for relief under the foregoing statutes, Plaintiff cannot survive a Rule 12(b)(6) challenge. *See Iqbal,* 129 S. Ct. at 1949. Moreover, if Plaintiff does not sufficiently demonstrate the required effect, or potential effect, on interstate commerce, the Court lacks federal subject matter jurisdiction over this case.

C. Plaintiff's Federal Claims

It is true that a complaint is not required to quantify with specificity the alleged impact, or potential impact, of a defendant's conduct on interstate commerce. *See McClain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 243

(1980). However, a complaint must contain sufficient factual matter to demonstrate a substantial effect, or the potential for a substantial effect, on interstate commerce in order to state a claim under the Sherman Act. *See Summit Health*, 500 U.S. at 330-31; *McClain*, 444 U.S. at 242. This requires more factual content than conclusory statements that a defendant's conduct involves or otherwise affects interstate commerce. Similarly, a complaint must sufficiently allege at least one discriminatory sale made in interstate commerce in order to support a Clayton Act claim. *See Texaco*, 496 U.S. at 556; *Gulf Oil*, 419 U.S. at 195.

Plaintiff's Second Amended Complaint contains the following six allegations with respect to the purported effect of Defendants' conduct on interstate commerce:

(1) "The operations and sales that are the subject of this lawsuit, as well as the specific conduct alleged herein, involve interstate commerce, and otherwise affect interstate commerce." Second Am. Compl., at ¶ 24.

(2) "The Golf Package Contracts require, in short, that the Hotel Association member golf courses honor the Hotel Association Golf Package Program tickets (*i.e.* vouchers) presented to them by the patrons of the Hotel Association Lodgings/Golf Packagers for the reserved tee times, in lieu of payment of green and cart fees. These patrons and customers are comprised of out-of-state persons visiting the Mississippi Gulf Coast participating in the voucher program." *Id.* at ¶ 28.

(3) "Thus, the Defendant Golf Courses offer higher priced golf rounds to the Hotel Association voucher program, while offering lower rates to the Golf Association voucher program. The Defendant Golf Courses comprise a significant number of courses that are used by out-of-state visitors to the Mississippi Gulf Coast. The Defendant Golf Courses' and the Golf Association's concerted efforts to monopolize the golf package market on the Mississippi Gulf Coast by offering higher rounds to programs other than the Golf Association's program, specifically the Hotel Association's

program. The efforts of the Defendants prevent any other golf package programs from being established and is causing significant harm to the existing golf package programs on the Mississippi Gulf Coast." *Id.* at ¶ 45.

(4) "The Hotel Association and Golf Association directly compete with each other through their golf package voucher program. The voucher program of both associations service the region of the Mississippi Gulf Coast. The patrons and consumers who use and purchase the vouchers are comprised of out-of-state residents who visit the Mississippi Gulf Coast." *Id.* at ¶ 47.

(5) "The operations and sales that are the subject of this lawsuit, as well as the specific conduct herein, involve interstate commerce, and otherwise affect interstate commerce." *Id.* at ¶ 53.

(6) "Moreover, the operations and sales that are the subject of this lawsuit, as well as the specific conduct alleged herein, involve commodities and services in interstate commerce, and otherwise affect interstate commerce." *Id.* at ¶ 61

Paragraphs 24, 53, and 61 contain purely conclusory allegations as to the purported impact of Defendants' conduct on interstate commerce. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. The allegations contained in Paragraphs 28, 45, and 47 are likewise insufficient to make the requisite showing that the activities in question were sufficiently in interstate commerce, or substantially affected or potentially affected interstate commerce, to support a claim under the Sherman Act. *See Cowan*, 814 F.2d at 225. Nor are they adequate to demonstrate that one of the sales in question

was made in interstate commerce pursuant to the Clayton Act. *See Texaco*, 496 U.S. at 556.

Reading the Second Amended Complaint as a whole, and accepting as true its allegations regarding the purported impact on interstate commerce, the Court concludes that Plaintiff has not adequately pled a substantial impact, or the potential for a substantial impact, on interstate commerce. Nor does it adequately allege a sale made in interstate commerce. The relevant factual allegations are general and conclusory, and do not sufficiently establish that the conduct in question was in interstate commerce or has, or could have, the requisite impact on interstate commerce. Plaintiff refers to customers who are comprised of out of state visitors, but this bare statement alone is insufficient to properly allege that Defendants' activities are themselves in interstate commerce, or substantially affect, or potentially substantially affect, interstate commerce. While the Second Amended Complaint's allegations recite the basic standard, they do not sufficiently explain how the facts pled, if true, result in an out of state sale, or translate into a substantial effect on interstate commerce.

In its Response to the Motion to Dismiss, Plaintiff argues that "having a substantial number of interstate customers and honoring credit cards from other states presented enough evidence to satisfy the affecting interstate commerce requirement of the Sherman Act." Resp., at p. 6 (*citing United States v. Cargo Service Stations, Inc.*, 657 F.2d 676, 680 (5th Cir. 1981)). The Court notes, however,

that the Second Amended Complaint does not contain such allegations.  Plaintiff goes on, in its Response brief, to make the following arguments:

> In the case at bar, the vast majority, if not all, of the customers who purchase these vouchers are out of state customers.  Moreover, contrary to Defendants' allegations in their Memorandum, the Plaintiff does sell rounds of golf through its voucher system.  The Plaintiff does collect money from these sales.  These sales do involve credit card transactions with out of state customers. The golf voucher business on the Mississippi Gulf Coast does affects [sic] interstate commerce because the vast majority, if not all, of the customers are from out of state and the sales are conducted interstate.  Defendants' allegations that the golf and voucher program is "decidedly local" is not backed by anything other than an unsubstantiated statement which is not reasonable to believe.  The voucher program exists to service out of state customers, and moreover, just because a conspiracy is "local in nature" does not mean that it does not affect interstate commerce. See *City of Fort Lauderdale v. East Coast Asphalt Corp.*, 329 F.2d 871, 873 (5th Cir. 1964).  Indeed, Plaintiff has pled as much.  This business deals with interstate commerce because its sales are to out of state customers and many of the transactions are performed over interstate phone lines via credit card, etc.  Defendants' bare assertions that the golf voucher programs do not affect or involve interstate commerce are false, and belied by the allegations in the Complaint. *See* [*McMillan v. Collection Professionals Inc.,* 455 F.3d 754, 758 (7th Cir. 2006)] (holding that all reasonable inferences are drawn in favor of plaintiff).  It is reasonable to infer that the voucher program, which works in conjunction with hotels, sells the vast majority, if not all, of its vouchers to out of state customers and these transactions are conducted over interstate phone lines via credit card, etc.

Resp., at pp. 6-7.

These allegations were not advanced in the Second Amended Complaint.  Nor was an affidavit, declaration, or other evidence presented in support of this attorney argument.  As the Supreme Court held in *McClain*, to establish jurisdiction, Plaintiff must allege the "the critical relationship in the pleadings and if these allegations are controverted must proceed to demonstrate by submission of evidence

-12-

beyond the pleadings" the requisite impact on interstate commerce. *McLain*, 444 U.S. at 242 (*citing Gulf Oil*, 419 U.S. at 202). In short, mere argument in a response brief is insufficient to carry this burden.

The Court recognizes that there is authority to suggest that it may use a response brief to clarify allegations in a complaint whose meaning is unclear. *See Pegram v. Herdrich,* 530 U.S. 211, 230 n.10 (2000). However, the Court finds that Plaintiff's Response raises some entirely new arguments and does not simply clarify allegations contained in the Second Amended Complaint. The Second Amended Complaint says nothing about interstate sales of vouchers or use of credit card sales. No explanation has been offered for the omission of these details from the earlier versions of the Complaint, even after the Court had specifically advised Plaintiff that it "[had] not articulated sufficient factual allegations establishing any effect on interstate commerce." Order [40], at p. 5. As the Supreme Court noted in *Twombly*, "it is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive." *Twombly*, 550 U.S. at 558 (internal citation omitted).

Nor has Plaintiff sought to amend the Complaint in opposition to the present Motion to Dismiss. There is authority to suggest that the Court may construe the Response as a motion for leave to amend. *See Cash v. Jefferson Associates, Inc.*, 978 F.2d 217, 218 (5th Cir. 1992). *Cash* was a pre-*Twombly* decision. Based on the record and the law, the Court is not persuaded that justice requires construing the Response as a motion for leave to amend the Complaint for the third time. *See*

FED. R. CIV. P. 15(a). Even assuming the Court were to construe the Response as an amendment, the Court is not persuaded that these new allegations would be sufficient to properly establish the necessary impact on interstate commerce or otherwise state a claim.

Plaintiff has now twice amended its Complaint and has conducted written discovery, but has still not adequately pled sufficient facts, or submitted evidence, to state plausible claims that the activities alleged are actually in interstate commerce, substantially affect, or have the potential to substantially affect, interstate commerce, or that one of the allegedly price-discriminatory sales was itself in interstate commerce. *See Iqbal,* 129 S. Ct. at 1949; *Twombly,* 550 U.S. at 556-57; *see also Cowan*, 814 F.2d at 226. For these reasons, Plaintiff has also not demonstrated that federal subject matter jurisdiction exists over this suit. *See Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) ("Federal courts are courts of limited jurisdiction. [The Court] must presume a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum.").

Even assuming Plaintiff has pled a sale in interstate commerce on its price discrimination claim, the Court is of the opinion that dismissal of the Clayton Act claim would nevertheless be appropriate. Plaintiff asserts that Defendants violated sections 2(a) and 2(f) of the Clayton Act. Section 2(f) provides that

> [i]t shall be unlawful for any person engaged in commerce, in the course of such commerce, knowingly to induce or receive a discrimination in price which is prohibited by this section.

15 U.S.C. § 13(f).

Section 2(a) of the Clayton Act deals only with discrimination in price between different purchasers of "commodities of like grade or quality." 15 U.S.C. § 13(a); *see, e.g., Tri-State Broadcasting Co. v. United Press Intern., Inc.*, 369 F.2d 268, 269-71 (5th Cir. 1966) (affirming district court's dismissal of plaintiff's complaint for violation of section 2(a) of the Clayton Act, because the news information service supplied by defendant did not constitute a "commodity" within contemplation of the Act). As the Fifth Circuit has recognized,

> [v]irtually no transfer of an intangible in the nature of a service, right, or privilege can be accomplished without the incidental involvement of tangibles and ... in such circumstances the dominant nature of the transaction must control in determining whether it falls within the provisions of the [Robinson-Patman] Act.

*Aviation Specialties, Inc. v. United Technologies Corp.*, 568 F.2d 1186, 1191 (5th Cir. 1978) (*quoting Tri-State Broadcasting Co. v. United Press International, Inc.*, 369 F.2d 268, 270 (5th Cir. 1966)).

Plaintiff's Clayton Act claim essentially complains of price discrimination in the sale of a privilege to utilize various Defendants' golf courses at a discount. Even if this activity incidentally involves tangibles, the Court is of the opinion that the dominant nature of the transaction is that of an intangible right or privilege to use the golf courses in question. *See id.* Because these transactions do not qualify as the sale of "commodities," the Second Amended Complaint fails to state a claim under the Clayton Act.

Based on the foregoing, the Court is of the opinion that dismissal of Plaintiff's Second Amended Complaint is appropriate for lack of federal subject matter

jurisdiction pursuant to Rule 12(h)(3), or alternatively for failure to state a claim pursuant to Rule 12(b)(6).

D.  Plaintiff's State Law Claims

Because the Court lacks federal subject matter jurisdiction, dismissal without prejudice of Plaintiff's state law claims is appropriate. Even assuming federal subject matter jurisdiction existed, because the Court dismisses all claims over which it arguably had original jurisdiction, the Court is of the opinion that it should decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3). The Motion to Dismiss will therefore be granted as to these claims.

III.  CONCLUSION

The Court has considered Certain Defendants' Motion to Dismiss and all relevant legal authorities, pleadings, and submissions, and concludes that, for the reasons stated herein, the Motion to Dismiss must be granted.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Certain Defendants' Motion to Dismiss [113], filed April 1, 2010, in the above-captioned cause, should be, and hereby is, **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff's federal claims for violations of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and violations of section 2 of the Clayton Act, 15 U.S.C. § 13, contained in its Second Amended Complaint should be, and hereby are, **DISMISSED WITH PREJUDICE**, and that Plaintiff's state law claims for tortious interference with

business relations and tortious interference with contract should be, and hereby are, **DISMISSED WITHOUT PREJUDICE**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, all remaining pending motions are hereby **DENIED AS MOOT.**

**SO ORDERED AND ADJUDGED**, this the 10th day of August, 2010.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE